FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Sep 30 2021

KEVIN P. WEIMER, Clerk

By: s/Christopher Boundy
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Rodolfo Hernandez Espinoza

**CRIMINAL COMPLAINT**

Case Number: 1:21-MJ-921

I, the undersigned complainant, depose and say under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

On or about September 29, 2021, in Clayton County, in the Northern District of Georgia, defendant did, knowingly and intentionally possess with intent to distribute a controlled substance, said act involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section(s) 841(a)(1) and 841(b)(1)(A).

I further state that I am a Task Force Officer with the Drug Enforcement Administration and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

_____
Signature of Complainant
TFO Michael Hannan

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it.

September 30, 2021  at 11:30 AM              at   Atlanta, Georgia
Date                                                              City and State

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE                          /s/ AJB
Name and Title of Judicial Officer                Signature of Judicial Officer

*Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1*

SAUSA Rachel S. Lyons / Rachel.Lyons@usdoj.gov / (770) 490-8772

ATTEST: A TRUE COPY
CERTIFIED THIS

Date: Sep 30 2021

KEVIN P. WEIMER, Clerk

By: s/Christopher Bou
Deputy Clerk

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Michael Hannan, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), United States Department of Justice, depose and state under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

### A. Introduction

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. By this affidavit, I submit that probable cause exists to believe that Rodolfo Hernandez Espinoza ("ESPINOZA") committed a narcotics offense by knowingly and intentionally possessing with intent to distribute a controlled substance, said act involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

### B. Training and Experience

3. I am a Task Force Officer with the DEA assigned to the Atlanta High Intensity Drug Trafficking Area (HIDTA) Task Force and have been since 2002. I am also a Deputy Sheriff with the Fulton County Sheriff's Office (FCSO) and have been so employed since November 2009 as an Investigator in the Criminal

Investigations Unit. Prior to my employment with the FCSO, I was employed with the Fulton County Police Department (FCPD) for approximately 17 years (beginning in 1993) with the last nine years as a Detective assigned to the Narcotics Unit.

    4. As a Task Force Officer with HIDTA, I investigate criminal violations of federal and state drug laws and related offenses. I have received training, both formal and informal, in the enforcement of drug laws, investigation of drug trafficking and money laundering organizations, drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

    5. Further, I have participated in dozens of federal and state wire investigations that resulted in arrests and seizures concerning drug trafficking and money laundering. During these investigations, I have observed drug traffickers using telephones and other electronic devices in furtherance of their illegal activities. I have analyzed telephone toll records and other records and debriefed informants regarding the use of telephones, electronic messaging applications, and electronic storage devices.

    6. Based on my training and experience, participation in criminal investigations, and the training and experience of other officers and agents with whom I am working, I know that:

    a. Many cellular telephones, computers, tablets, smart watches, and electronic storage media including hard drives and thumb drives (collectively, "electronic devices") currently have advanced capabilities,

including: internet browsing, text and e-mail, photography and video storage, notes, calendars, and data file storage.

b. Drug traffickers and money launderers frequently use electronic devices and keep a list of names and numbers of customers, suppliers, and coconspirators. Cell phones, tablets, and other electronic devices will also carry information in a SIM (Subscriber Identity Module) or SD (Secure Digital memory) card, or some other type of electronic storage card or drive, which will reveal that information along with the cell phone number assigned to the device and other information indicating the identity of the user.

c. Drug traffickers and money launderers use electronic devices to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names, addresses, and telephone numbers of co-conspirators; obtain and store addresses, directions, and maps; maintain photographs of criminal associates; search the internet; and capture audio, image, and video files. Records of these activities are often stored in the memory of electronic devices.

d. Furthermore, I know that it is common for drug traffickers and money launderers to possess and use multiple electronic devices to facilitate their unlawful conduct. Indeed, it is my experience that they purposefully use multiple communication devices so as to not alert law enforcement of the complete scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. By way of example only, a drug trafficker or and

money launderer may have one cellular telephone used to call their drug source of supply, another telephone used to call customers, and yet another to call drug distributors, in addition to a telephone for personal use.

e. Additionally, they may also use a tablet computer for email and text messaging with coconspirators and financial institutions; they may use a laptop to store spreadsheets with information about assets and create or alter documents like bank statements, property deeds, or proof of identification; and they may use removable electronic storage media to back up important documents and communications regarding their criminal activities.

f. In short, electronic devices are vital instruments to drug traffickers and may contain many different types of significant evidence of their criminal activities.

7. Based on my training and experience in the investigation of drug traffickers and money launderers, and the training and experience of other officers and agents with whom I am working, and based upon interviews I have conducted with defendants, informants, and other witnesses to, and participants in, drug trafficking activity, I am familiar with the ways in which drug traffickers and money launderers conduct their business, including the ways that drug traffickers maintain records and documents relating to their drug trafficking and the ways that they conceal, convert, transmit, and transport their drug proceeds. I also know that:

a. Narcotic traffickers often purchase or maintain residences, businesses, real estate, and real property to disguise or launder their illegal proceeds from narcotic trafficking. Records pertaining to the ownership, control, and acquisition of these properties are usually kept and maintained to provide an appearance of legitimacy. Narcotic traffickers often place their assets in names other than their own – sometimes in the names of close family members – to avoid detection of these assets by government agencies. However, even though their assets are in other persons' names, narcotic traffickers own and continue to use these assets and exercise dominion and control over them.

b. Narcotics traffickers and money launderers often maintain copies of books, records, notes, ledgers, airline tickets, money orders, deposit slips, bank account numbers, and other papers relative to the transportation, ordering, sale, and distribution of controlled substances and proceeds thereof.

c. Narcotics traffickers occasionally "front" (provide on consignment) narcotics to their clients. Books, records, receipts, notes, ledgers, etc. (some being coded and cryptic in nature), are maintained to keep track of these arrangements, and are often kept where the narcotic traffickers have ready access to them, but are concealed in secure locations within, or in near proximity to, their residences, businesses, vehicles, and electronic devices in a way to make discovery by law enforcement authorities difficult.

d. Narcotic traffickers and money launderers commonly keep records of codes, as well as residential addresses, e-mail addresses, telephone

numbers, and/or encrypted names of their associates in the trafficking organization.

e. Narcotic traffickers and money launderers often utilize cellular telephones, computers, electronic storage devices, etc., to facilitate communication with conspirators, store telephone numbers/addresses of associates, and store other records relating to their narcotics trafficking and money laundering activities.

## C. Probable Cause

8. In late August 2021, agents with the Atlanta-Carolinas HIDTA Task Force received information from a Cooperating Source (CS) regarding individuals who were distributing multi-kilogram quantities of methamphetamine from motels in Clayton and Henry Counties.[1] On September 20, 2021, HIDTA Task Force Officer (TFO) Mike Hannan identified one of the suspected drug traffickers as Rodolfo Hernandez ESPINOZA. ESPINOZA was observed by agents on multiple occasions over the past several weeks driving a white Honda Odyssey minivan registered to "Rodolfo Hernandez Espinoza" at "945 Illges Rd, Columbus, GA." Agents also observed at least three unknown individuals arrive at motel rooms being utilized by ESPINOZA and/or his associate, stay in the

---

[1] The CS has a lengthy criminal history including drug distribution charges and aggravated assault. The CS was initially debriefed by HIDTA agents regarding his knowledge of drug trafficking organizations in the metro-Atlanta area. He/she hoped to receive consideration on pending drug charges in Rabun County. The CS provided information to agents which helped identify methamphetamine distribution locations, as well as sources of supply. After the initial debriefing, agents learned that the CS had active arrest warrants for probation violations in Hall and Rabun Counties. Agents determined at that time not to solicit further information from the CS until his probation violation was resolved, however, the CS continued to provide unsolicited information. I have been able to verify the information provided by the CS and found it to be reliable.

room only a short period of time, and leave carrying a package. Based on this activity, and agents' training and experience, I believe these individuals were drug customers of ESPINOZA.

    9. On September 28, 2021, agents conducted a spot check at the Quality Inn located at 7325 Davidson Pkwy, Stockbridge, GA, which is one of the motels that ESPINOZA and his associate were believed to utilize to conduct their drug business.  While at the Quality Inn, TFO Hannan observed ESPINOZA's Honda Odyssey minivan parked in the parking lot near room #111.  TFO Robert Slover arrived and maintained surveillance on the vehicle.  He observed ESPINOZA exit room #111, get into the driver's seat of the minivan, depart the motel and drive to a BP gas station in Morrow, GA.  ESPINOZA remained in the BP for a short period of time before surveillance was terminated.

    10. On the morning of September 29, 2021, HIDTA agents again established surveillance at the same Quality Inn at 7325 Davidson Pkwy, Stockbridge. ESPINOZA's Honda minivan was observed parked near room #111. Agents observed ESPINOZA leave the room carrying multiple suitcases and duffle bags which he loaded into the back of the minivan.  ESPINOZA departed the Quality Inn and drove directly to another Quality Inn located at 6597 Jonesboro Rd, Morrow, GA.  Agents observed ESPINOZA retrieve the suitcases and duffle bags from his minivan and enter room #214.   Not long after, agents observed a black Toyota Camry driven by a white male arrive at the Quality Inn.  A white female, carrying a large purse, got out of the front passenger seat of the Camry, walked toward the motel, and went into room #214.  A few minutes later, the female exited room #214 and got back into the passenger seat of the Camry.  The Camry

then departed the motel, followed by HIDTA agents; other HIDTA agents maintained surveillance on ESPINOZA's motel room.

11. After making a stop at a nearby Shell gas station, the Camry got onto I-75 south. Georgia State Patrol Trooper Munoz conducted a traffic stop. The female occupant, who was also the vehicle's co-owner, provided written consent to search the vehicle. During the search, a quantity of methamphetamine and three handguns were located in the vehicle. The male driver and female passenger were arrested on drug and weapons charges and transported to the Henry County Jail.

12. During the time that the traffic stop was being conducted on the Camry, agents at the Quality Inn observed ESPINOZA leave room #214, get into his minivan, and depart the motel parking lot. Agents maintained surveillance at the motel and did not follow ESPINOZA. After approximately 40 minutes, ESPINOZA arrived back at the Quality Inn.[2] As the minivan drove around the lot, agents blocked the car using undercover vehicles, asked ESPINOZA to get out of the car, and placed him in handcuffs. Immediately after being detained, ESPINOZA expressed an interest in speaking with the agents. Approximately 15 minutes later, TFO Juan Lopez-Martinez arrived and read ESPINOZA his *Miranda* rights in Spanish. ESPINOZA stated that he understood his rights and agreed to answer questions without an attorney present.

13. ESPINOZA told the agents that he had approximately 15 kilograms of methamphetamine in his motel room (#214). He gave written consent to search

---

[2] By this time, agents had located the methamphetamine and handguns in the Camry during the traffic stop.

room #214 and his minivan. Agents subsequently conducted a search of the room and located two suitcases containing approximately 12.5 kilograms of suspected methamphetamine,[3] a 9mm handgun, an undetermined amount of U.S. Currency, and a drug ledger containing detailed information regarding drug transactions. Later, ESPINOZA told TFO Lopez-Martinez that he had sold approximately 200 kilograms of methamphetamine in the Atlanta area since July 2021.

## END OF AFFIDAVIT

---

[3] The substance field-tested positive for methamphetamine. Forensic analysis is pending.